James B. McCORSTIN, Jr.,
Plaintiff-Appellant,

v.

UNITED STATES STEEL CORPORA-
TION, Defendant-Appellee.

No. 78–1957.

United States Court of Appeals,
Fifth Circuit.

July 16, 1980.

G. Daniel Evans, Birmingham, Ala., for
plaintiff-appellant.

Thomas, Taliaferro, Forman, Burr &
Murray, J. Fredric Ingram, Birmingham,
Ala., for United States Steel.

Before HILL, KRAVITCH and THOMAS
A. CLARK, Circuit Judges.

KRAVITCH, Circuit Judge.

In this appeal this court must decide the parameters of a prima facie case filed under the Age Discrimination in Employment Act. The action was filed by a former employee of U.S. Steel Corporation who had given notice to the Secretary of Labor alleging violations of the ADEA. During pretrial, the district court denied the appellant's motion for class certification on the ground that the members of the putative class had not "opted in" to the action by giving notice to the Department of Labor. The court denied motions to intervene filed by six other employees on the same ground. The district court refused to compel discovery into the appellee's company-wide policy concerning reduction in work forces. Additionally, the district court denied McCorstin's motion for a jury trial. After McCorstin had presented evidence, the district court rendered a directed verdict against the appellant on the ground that a prima facie case of age discrimination had not been demonstrated, citing *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although we affirm the district court with respect to class certification, we reverse the directed verdict decision and remand for a *jury* trial on the merits, after a suitable period for renewed discovery.

Based upon the testimony and depositions before the court, the salient facts may be summarized as follows: The appellant initially began employment with the appellee United States Steel Corporation in 1940. Following interruptions for service in World War II and college, in 1947 McCorstin resumed his career with appellee as an industrial engineer. He remained with U.S. Steel until January 13, 1972 when he was terminated pending early retirement at the age of fifty-one.

Since 1965 McCorstin's employment history with the appellee has been checkered. He has had a number of different jobs, some of which involved demotions, and his level of performance in those jobs was disputed. For example, McCorstin's immediate superior in the Safety Department testified that his work was entirely satisfactory while the Assistant Superintendent of Personnel Services, Ruel Russell, stated that the numerous complaints about appellant, mainly his inability to work harmoniously with fellow employees, forced him to reassign McCorstin to the Metallurgy Department.[1]

In October of 1971 the General Supervisor advised McCorstin's immediate supervisor, Edge, that a reduction in force would occur. This reduction in force was accomplished by a combination of layoffs, early retirements and reductions in status from exempt[2] to non-exempt. As a result ten exempt employees, including McCorstin, were "reduced" in the Metallurgy Department. Of these ten, five were assigned non-exempt status, four were retired and one, the appellant, was laid off pending retirement. Of those reduced in status only one was eligible for early retirement. The appellant was finally laid off on January 31, 1972 and became eligible for early retirement[3] benefits nineteen months later.

---

1. While in the Metallurgy Department, McCorstin's work was evaluated four times with progressively deteriorating results. In 1968 the appellant ranked lower than the other Process Engineers. In 1969 he was among the bottom two or three persons. In 1970 he rated lower *than any other exempt metallurgical employee*, and in 1971 he was the lowest of 42 Supervisors and Product Metallurgists ranked.

 It is unfortunate that with regard to the 1971 rankings McCorstin's personal ratings have been lost. In conformance with the Company's policy regarding records, McCorstin's and the other engineers' rating sheets had been destroyed.

2. The term "exempt," as used in the defendant's personnel structure, means management employees who are exempt from the overtime provisions of the Fair Labor Standards Act. The term "non-exempt" is used to denote non-management salaried clerical and technical employees who are subject to the overtime provisions of the Fair Labor Standards Act.

3. Appellee's early retirement program required an individual to have at least a total of 80 points if under 55 (comprising the sum of the individual's age and years of service with the company) or a total of 70 if the individual were 55 or older.

Edge testified that although early retirement was mentioned as an option to those "reduced," retirement was not urged. He testified that McCorstin was selected to be laid off for four reasons: (a) his assignment in the development of the sheet mill providing program had substantially ended by the summer of 1971; (b) he had turned down the only other job in which he had had any appreciable experience, that is, the Blast Furnace computer job; (c) he ranked poorly in the 1971 rankings and had been rated poorly, on a comparative basis, for the other years in the Metallurgy Department; and (d) he had very limited experience in the Metallurgy Department, which would reduce the desirability of his moving to another job in that department. Edge testified that the fact that the plaintiff was fifty-one years of age and would become eligible for retirement at a later time played no part in the decision to select McCorstin for the reduction. Similar justifications were adduced for Edge's other reduction decisions concerning other employees. In contrast, McCorstin testified that Edge had specifically told him that because he was approaching early retirement he should consider the alternative, i. e., being fired.

With regard to the post-termination history of the appellee's reduction in force practice, the evidence and testimony demonstrates that McCorstin was not replaced by a person under forty years of age following his dismissal. It is questionable whether he was replaced at all. The appellant did offer evidence that the Company has actively solicited and hired recent college graduates to work in various engineering departments during the time period relevant to this appeal.

Because six other plaintiffs were dismissed from the case for failure to meet the jurisdictional requirements of notice to the Department of Labor and the court denied appellant's attempt to maintain a class action under Rule 23 Fed.R.Civ.Proc., certain additional post-termination facts must be recounted. On July 8, 1972 McCorstin tendered to the Department of Labor his notice of intention to sue, together with a statement of facts outlining widespread discriminatory practices by U.S. Steel. Subsequently, conciliation meetings were held between a member of the Wage and Hour Division. No attempt was made to redress any employee's grievance other than McCorstin. Nonetheless, the appellant contends that the Labor Department was put on notice of his intentions to prosecute the instant action on behalf of all employees similarly situated.

The pretrial period was stormy: two sets of attorneys were dismissed or asked to be relieved and numerous motions for continuances were made. In the course of pretrial proceedings, the court resolved two motions against the appellant that form the basis for two of his points on appeal. The trial court denied appellant's motion for a jury trial and refused to compel discovery against U.S. Steel into company-wide force reduction history. The basis for the denial of the discovery motion was the relative inactivity of plaintiff's earlier counsel and that the discovery cutoff date had passed. The court also denied a motion for a continuance in order to effect discovery. Trial commenced on September 21, 1977 and terminated on October 6 at the close of appellant's case in chief when U.S. Steel moved for involuntary dismissal. This motion was granted by the court after notice that it was considering the motion as one for summary judgment [4] or directed verdict pursuant to Rules 50(a) and 56(b) of Fed.R.Civ. Proc.

The appellant levels three attacks on the district court's judgment. First, McCorstin contends that the court erred in denying his motion for a jury. Second, the court's decision to limit discovery is challenged. Finally, appellant contends that error was committed in refusing to allow the case to proceed as a class action.

As the appellee concedes and the district court recognized in its memorandum opinion, the failure of the court to grant appel-

---

4. To whatever extent summary judgment was granted it was clearly in error because the factual reason for McCorstin's discharge was hotly contested and genuinely in dispute.

lant's motion for a jury constituted error. *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).[5] As the appellee argues, however, this error was harmless if the directed verdict was proper because, in that event, no jury question would have existed. *See United States v. Williams*, 441 F.2d 637 (5th Cir. 1971). It is therefore incumbent upon this court to review the propriety of the district court's directed verdict.

The standard to be applied in the review of the directed verdict was announced by this court in *Boeing v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc). In *Boeing* we stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of

the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

Although the *Boeing* standard is a necessary component for appellate review, it is not sufficient. Absent a legal framework for the compartmentalization of facts, evidence simply represents a small slice of history. For age discrimination analysis this circuit has adopted the four-prong test, with modification, that the Supreme Court promulgated for race discrimination in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Marshall v. Goodyear Tire and Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977); *Lindsey v. Southwestern Bell Telephone Company*, 546 F.2d 1123, 1124 (5th Cir. 1977); *Wilson v. Sealtest Foods Division of Kraftco Corporation*, 501 F.2d 84, 86 (5th Cir. 1974). The prima facie evidence test announced in *McDonnell* consists of the demonstration of four factual, objective elements:

> (i) that he [complainant] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [footnotes omitted]

411 U.S. at 802, 93 S.Ct. at 1824. The third and fourth factors have subsequently undergone a minor metamorphosis in the context of discharge of an employee to the requirements that the employee be discharged and that the discharged employee be replaced by a person outside the protected group. *See Price v. Maryland Casualty Company*, 561 F.2d 609, 612 (5th Cir. 1977).

---

5. McCorstin's motion for a jury was denied April 16, 1974. Trial commenced September 21, 1977 and continued until October 6, when the plaintiff rested. A motion for involuntary dismissal was subsequently made by the defendant and formalized in writing on October 11, 1977. Before the district court could rule upon the motion, however, the Supreme Court decided *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) on February 22, 1978, holding that parties have a right to a jury trial under the ADEA. The district court issued its memorandum decision directing a verdict in favor of the defendant on March 29, 1978.

The appellee argued and the district court held that the appellant failed to satisfy the fourth prong of the *McDonnell* test that he was replaced by a person outside the protected class, i. e., a person under forty years of age.[6] Indeed, McCorstin conceded below that he had not been so replaced. It is extremely questionable whether he had been replaced at all following the reduction in force. Foreclosed from claiming satisfaction of *McDonnell*'s fourth requirement, the appellant argues that the requirement should not and was not meant to apply in the instant case because age is not a discrete and immutable characteristic such as sex or race, but rather is a continuum. Additionally, McCorstin argues that a reduction in force is a business practice different in kind from routine discharge involving one-to-one substitutions.

To appraise the appellant's argument we must examine the statutory language, the elements of which any prima facie evidence test must reflect. Section 4(a)(1) of the ADEA, 29 U.S.C.A. § 623(a)(1), provides:

(a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

Based upon the statutory language, it is possible to categorize the *McDonnell* factors in the age discrimination context. The first and third factors, that the employee be in the protected age group and has been discharged, are no more than standing requirements under the statute. That is, discharge constitutes the cognizable injury and being a member of the protected class satisfies the requirement of being within the zone of interests protected by the statute. *See United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Associa-*

*tion of Data Processing v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The second prong, that the employee is qualified for the job, is, at most, a negation of a possible rebuttal to the claim of discrimination that has been deemed reasonable to place within the employee's burden of proof. It is clear, therefore, that the fourth factor only was intended to demonstrate discrimination, that is, unequal treatment, by the relatively objective evidence of replacement by a member of a nonprotected class.

Recognizing the methodology of the test impels the conclusion that the test in *McDonnell* was never intended to be the *only* prima facie evidence test for discrimination, age or otherwise. In *McDonnell* itself, the Supreme Court noted:

The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

411 U.S. 802, 93 S.Ct. at 1824. This circuit has also recognized that the *McDonnell* test is not the alpha and omega of possible tests in the age discrimination context. *See Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir. 1977). *See also Peters v. Jefferson Chemical Co.*, 516 F.2d 447, 450 (5th Cir. 1975). Because the *McDonnell* test reduces to the fourth factor as the basis for a claim of discrimination, its mechanical application would result in the proscription and prevention of one type of discrimination resulting in discharge only, the situation in which a person had been replaced by someone outside of the protected class. *See Ramirez v. Sloss*, 615 F.2d 163 (5th Cir. 1980).[7] This Procrustean limitation on the ADEA would be tantamount to holding that only price-fixing agreements are contracts in restraint of trade in violation of Section 1 of the Sherman Act. Discrimination, unfortunately, exists in forms

---

6. 29 U.S.C. § 631(a) provides:

"The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age but less than 70 years of age."

7. Although *Ramirez* is a § 1983 case, the condemnation of universal application of *McDonnell* is analogous to the situation in the instant case.

as myriad as the creative perverseness of human beings can provide.

A mechanistic application of the *McDonnell* prima facie test is especially dangerous in the context of age discrimination. Seldom will a sixty-year-old be replaced by a person in the twenties. Rather the sixty-year-old will be replaced by a fifty-five-year-old, who, in turn, is succeeded by a person in the forties, who also will be replaced by a younger person. Eventually, a person outside the protected class will be elevated but rarely to the position of the one fired. This is especially true in management and technical fields where knowledge and experience, the product of years, are necessary prerequisites to appointment of persons on high rungs of the corporate ladder.

The above discussion is not to be construed as a denunciation of the *McDonnell* test. On the contrary, the test provides an amount of certainty to courts and litigants alike on the allocation of proof and the orderly presentation of evidence. In those cases, however, when it was not intended to apply and, factually, cannot apply, the plaintiff must enjoy more leeway in a presentation of a prima facie case. Consequently, a more onerous burden must fall on the court to determine when and whether the plaintiff has demonstrated facts sufficient for a reasonable jury to infer that discrimination has occurred. Should the court determine that evidence exists sufficient to raise a presumption that unlawful discrimination has occurred, the burden of going forward with the evidence will shift to the defendant-employer. *Bittar v. Air Canada*, 512 F.2d 582 (5th Cir. 1975). In those situations where *McDonnell* does not apply the line of demarcation denoting the existence of a prima facie case is not bright, but in the area of subtle discrimination more specificity on the court's part would lead inexorably to less protection for victims.

Based upon the facts adduced at trial, we conclude that the *McDonnell* test should not have been applied. First, because there was a reduction in force, that is, a shrinking of the work force, even the threshold requirement of McCorstin's being replaced is inappropriate. Second, because the discrimination involves age, rather than sex or race, a requirement that the replacement be from a nonprotected group fails to take the reality of the working place into account. Because of the value of experience rarely are sixty-year-olds replaced by those under forty. The replacement process is more subtle but just as injurious to the worker who has been discharged. That the person is replaced by a person ten years younger rather than twenty years does not diminish the discrimination; the subtlety only tends to disguise it.

 With the applicability of *McDonnell* disposed of, we conclude that the court erred in directing the verdict in the instant case because of the existence of jury questions. Although there was evidence that McCorstin was fired for cause, which would have been rebuttal evidence had the burden shifted under *McDonnell*, there was also evidence of a pattern of terminating older workers when a reduction in force occurred allowing the reasonable inference that age had played a role in appellant's discharge. Therefore, under *Boeing* a jury question existed thus rendering the directed verdict inappropriate. In addition to this pattern of "reducing" older workers was the prevalence among those reduced of employees with the right to early retirement benefits. McCorstin testified that his superior had stated that one factor in his decision to terminate the appellant was the availability of early retirement benefits. An additional jury question, whether the availability of early retirement was a factor taken into consideration for his dismissal, therefore existed. This is not to imply that the mere existence of a permissive [8] early retirement

---

8. At the time of McCorstin's discharge in 1972, § 623(f)(2) provided:

 (f) It shall not be unlawful for an employer, employment agency, or labor organization—

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter,

program constitutes a prima facie case, however. Permissive early retirement is a laudable attempt to provide security for those who are unable or disinclined to continue to work to the mandatory or normal time for retirement. These programs, however, cannot be a basis or factor for a discharge decision. *See Hannan v. Chrysler Motors Corp.*, 443 F.Supp. 802 (E.D.Mich. 1978). Once a decision has been reached to discharge an employee based upon neutral principles, the employee may be offered early retirement as an alternative to discharge, but availability of the plan itself may have no bearing on the decision.

■ Because we hold that questions for the jury exist under *Boeing, supra*, and that the directed verdict was erroneous, it automatically follows that denial of McCorstin's jury demand was prejudicial, and we therefore remand for a trial on the merits. *See United States v. Williams*, 441 F.2d 637 (5th Cir. 1971). Because this action will be retried, we also vacate the district court's order denying Appellant additional opportunity for discovery. That order sought principally to prevent delay of a scheduled, imminent trial date, now long since past. On remand, the district court shall permit such

additional discovery as the court, in its discretion, deems appropriate.

■ Finally, McCorstin claims that the court erred in refusing to certify his putative class. The district court denied the motion for a class action based upon the failure of the other members of the class to file an intent to sue letter with the Secretary of Labor in accordance with 29 U.S.C. § 626(d).[9] The district court further held that § 626(d) notice was a prerequisite to and complement of the class action mechanism provided by § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b).[10] The district court was correct. In *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir. 1977), this court held that class actions pursuant to ADEA are opt-in actions, that is, affirmatively consensual, in accordance with § 16(b), rather than "opt-out" under Rule 23(b), Fed.R.Civ.Proc. Additionally, the court held that § 626(d) notice to the Secretary of Labor is a necessary prerequisite to the maintenance of a class action under the ADEA. *See also La Chapelle v. Owens-Illinois*, 513 F.2d 286 (5th Cir. 1975). In order to avoid *Price*, McCorstin argues that it is possible for an individual employee's notice to the Secretary to satisfy

---

except that no such employee benefit plan shall excuse the failure to hire any individual. . . .

To be protected by this exemption, however, it is necessary for the plan to establish a mandatory early retirement age rather than one which permits an employee with sufficient work time to avail himself of benefits. *United Air Lines v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977).

9. At the time of this action, § 626(d) provided:

No civil action may be commenced by any individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action. Such notice shall be filed—

(1) within one hundred and eighty days after the alleged unlawful practice occurred, or

(2) in a case to which section 633(b) of this title applies, within three hundred days after the alleged unlawful practice occurred or within thirty days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

10. Section 7(b) of the ADEA directs that:

the provisions of this Chapter shall be enforced in accordance with the powers, remedies, and procedures provided in Sections 211(b), 216 . . . and 217 of this title, [which are provisions of the Fair Labor Standards Act].

29 U.S.C. § 216(b) provides in part:

Action to recover such liability may be maintained . . . against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to . . . such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

§ 626(d) if the notice embraces claims of similarly situated employees. We cannot reach this claim, however, because the district court found, as a factual matter, that McCorstin's notice and subsequent negotiations did not purport to include others similarly situated. We are unable to conclude that this finding of fact was clearly erroneous.

REVERSED AND REMANDED.