**Rayford C. PACE, Plaintiff,**

v.

**SOUTHERN RAILWAY SYSTEM, Defendant.**

**Civ. A. No. C79–1403A.**

United States District Court, N. D. Georgia, Atlanta Division.

Nov. 25, 1981.

William Hazleton, Atlanta, Ga., for plaintiff.

Carey De Deyn, Judith O'Brien, Atlanta, Ga., for defendant.

## ORDER OF COURT

HORACE T. WARD, District Judge.

This is an action for relief under the Age Discrimination In Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). Plaintiff Rayford C. Pace ("Pace") alleges that his employer Southern Railway Company ("Southern") discriminated against him on the basis of his age in connection with his demotion in November of 1978. Plaintiff contends that Southern's action violated the ADEA, and seeks declaratory relief, reinstatement to his former position, back pay, liquidated damages, punitive damages, costs and attorney's fees. This matter is currently before the court on Southern's motion for summary judgment.

Pace, 51 years old at the time of the demotion, was first employed by Southern in 1944. Except for two relatively brief interruptions—from 1950 until 1953 and from 1966 until 1968—he has been employed by Southern since that date, a total of approximately 30 years. Plaintiff has held a variety of jobs during his career at Southern, generally climbing the promotional ladder. In January of 1971, Pace was promoted to the position of Superintendent of Southern's Signal and Electrical ("S&E") Department. The S&E Department subse-

quently merged with the Communications Department to form the Communications and Signals ("C&S") Department. The former Superintendent of the Communications Department, J. T. Hudson ("Hudson"), became General Superintendent of Operations in the newly formed C&S Department. Plaintiff initially served as Assistant General Superintendent-Operations in the newly merged department, but after approximately one year he was transferred to the position of Senior Construction Engineer. Plaintiff considered his transfer to this position to be a promotion. It is unclear as to exactly how Pace's superiors evaluated his performance as Senior Construction Engineer, but the record indicates that he received some criticism.[1]

As a result of several personnel changes in the C&S Department in 1974, plaintiff was reassigned to the position of Assistant General Superintendent-Operations, a position he held for approximately a year prior to becoming Senior Construction Engineer. During the same period of time, Hudson, the General Superintendent-Operations in the C&S Department was promoted to Assistant Vice-President of the C&S Department. F. H. McIntyre ("McIntyre") was promoted to the position of General Superintendent-Operations to fill the vacancy created by Hudson's promotion to Assistant Vice-President. McIntyre's prior position had been that of Assistant General Superintendent-Operations, and plaintiff's reassignment to that position was necessitated by McIntyre's promotion. Plaintiff considered his transfer from the position of Senior Construction Engineer to the position of Assistant General Superintendent-Operations to be a demotion.[2]

Pace served as Assistant General Superintendent until November of 1978. At that time, plaintiff, then 51 years of age, was transferred to the position of Senior Development Engineer in the C&S Department. Plaintiff's replacement as Assistant General Superintendent-Operations was D. E. Barker ("Barker"). Barker was then 49 years of age, two years younger than Pace, and had been with Southern for approximately 22 years. For purposes of this motion, it will be assumed that Pace's transfer to Senior Development Engineer was a demotion. It is this transfer about which plaintiff now complains.

The position of Assistant General Superintendent-Operations from which plaintiff was transferred involved considerable administrative responsibilities. Defendant argues that plaintiff exhibited an inability to master the administrative tasks of the job, and that this resulted in his transfer. McIntyre, Pace's immediate supervisor, felt that Pace did not do a satisfactory job of accepting the administrative responsibilities of his position as Assistant General Superintendent, and that Pace failed to follow up and make sure that proper results were achieved. It was McIntyre's assessment that Pace had a poor attitude with regard to his job, and lacked sufficient motivation. Although conceding that Pace possessed considerable technical knowledge and skills, defendant felt that he did not perform up to his full capabilities, and that he could not handle the administrative duties. It is argued that Pace was aware of the criticisms of his performance, and that McIntyre had discussed the criticisms with him.

Plaintiff disagrees with most of the criticisms of his performance, and points to the fact that he received only one "Job Performance Appraisal" during the period of time that he served as Assistant General Superintendent-Operations. He apparently takes the position that he was not fully apprised of the criticism until this Job Performance Appraisal. Although the apprais-

---

1. The record does not clearly reflect the nature or source of this criticism. *See* Deposition of Rayford C. Pace, pp. 55–62; Deposition of J. T. Hudson, pp. 58–59.

2. Plaintiff considered this transfer to be a demotion even though he suffered no salary decrease or loss of job points. *See* Pace Deposi-

tion, p. 63. In this regard, the court notes that after plaintiff was transferred from the position of senior construction engineer, the position was upgraded to general superintendent of construction, with an accompanying increase in job points and reporting status.

als are supposed to be made annually, the record reflects only one appraisal of Pace while he was Assistant General Superintendent, in May of 1976. In that appraisal, McIntyre gave plaintiff an overall rating of adequate, the second lowest rating one can receive. Most of the above criticisms of plaintiff's performance were made in the appraisal. McIntyre's supervisor, Hudson, changed Pace's overall rating to competent. However, he stated that an officer on Pace's level should have received a better evaluation. Pace did discuss his performance evaluation with McIntyre, and although he disagreed with some aspects of the evaluation, he admitted that some of the criticisms of his performance were reasonable.

Pace argues that his superiors exhibited a bad attitude towards him. Specifically, he complains of his regular exclusion from decisionmaking meetings, the failure to invite him to attend trips to company-owned resort areas, the lack of opportunities to ride inspection trains, and other indications of differential treatment. He argues that these factors had a negative effect on his motivation. Further, Pace points to the fact that he received a six percent merit pay increase in 1977 as an indication that he was performing satisfactorily.

McIntyre testified in his deposition that during the time from the 1976 job appraisal until plaintiff's eventual transfer, plaintiff failed to improve his performance in the specific areas which had been subject to criticism. He further stated that he frequently counseled Pace with regard to the continuing problems, and that he also discussed the matter with Hudson. Hudson testified that he did have discussions with McIntyre regarding Pace's performance, and that he was sure he had also discussed the matter with Pace.

Pace testified that he first became aware of the extent to which there was dissatisfaction with his performance in a meeting with Hudson and McIntyre in July of 1978. In that meeting, Hudson then informed Pace of his intention to move Pace to another job position. Pace testified that he was totally surprised at that revelation, and he told his superiors that he intended to do all he could to fight a transfer. McIntyre stated that this meeting was the first instance that a position change for Pace was explicitly discussed, although there had been previous discussions regarding Pace's allegedly deficient performance. In September of 1978, McIntyre wrote a letter to Hudson regarding Pace's performance. In the letter, McIntyre made criticisms of Pace's performance similar to those discussed above. McIntyre recommended that Pace be given another position within the department where his skills could be better utilized. Subsequent to receiving the letter, Hudson discussed it with McIntyre. McIntyre reiterated his position that a transfer was necessary, stating that Pace's performance had not shown any improvement over the years. In November of the same year, Pace was "demoted" to the position of Senior Development Engineer.

Southern argues that, under the above facts, it is entitled to judgment as a matter of law because plaintiff has failed to establish a prima facie case of age discrimination. Additionally, Southern contends that even if the court was of the opinion that a prima facie case had been established, it would still be entitled to summary judgment because plaintiff cannot sustain his burden of proving age discrimination. In other words, Southern contends that even if plaintiff has established a prima facie case of age discrimination, he cannot rebut defendant's evidence that plaintiff was discharged for reasons other than his age.

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth a four-pronged test for establishing a prima facie case of employment discrimination in a case under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.[3] The Fifth Circuit has

---

3. To establish a prima facie case of race discrimination, a plaintiff must prove that (1) he is a member of a racial minority; (2) he was qualified and applied for a job which the em-

adapted the *McDonnell Douglas* for purposes of establishing a prima facie case under the ADEA. *See Marshall v. Goodyear Tire & Rubber Company*, 554 F.2d 730 (5th Cir. 1977); *Wilson v. Sealtest Foods Division of Krafto Corporation*, 501 F.2d 84 (5th Cir. 1974).[4] Thus, a prima facie case of age discrimination can be established by a plaintiff's demonstration that "(1) he was a member of the protected group, (2) he was discharged, (3) he was replaced with a person outside the protected group, and (4) he was qualified to do the job." *Price v. Maryland Casualty Company*, 561 F.2d 609 (5th Cir. 1977). In *Price*, the Court held that the plaintiff employee had failed to establish a prima facie case because he could not show that he was replaced by a person outside of the protected group.[5]

Since the decision in *Price*, the applicability of the above test has been reaffirmed. *See Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369 (5th Cir. 1980); *Marshall v. Westinghouse Electric Corporation*, 576 F.2d 588 (5th Cir. 1978). However, some courts have recognized that the *McDonnell Douglas* test is not the only method of establishing a prima facie case of employment discrimination. In *McCorstin v. United States Steel Corporation*, 621 F.2d 749 (5th Cir. 1980), the Court stated that the *McDonnell Douglas* test was "not the alpha and omega of possible tests in the age discrimination context." 621 F.2d at 753. The court thus recognized that the *McDonnell Douglas* test may not be applicable to all factual situations, and that other tests may at times be appropriate. In that case, the Court held that a prima facie case was established by evidence indicating a pattern of terminating older employees when there was a reduction in force.

Similarly, in *Moore v. Sears Roebuck & Company*, 464 F.Supp. 357 (N.D.Ga.1979),

Judge Freeman of this district held that the *McDonnell Douglas* standard was not the only method of establishing a prima facie case. It was recognized that different factual situations may require different standards for establishing a prima facie case. The Court stated that a plaintiff could make out a prima facie case "if he shows: (1) that he was a member of the protected class; (2) that he was discharged; (3) that he was qualified for the position he held; and (4) if, in addition, he (a) shows he was replaced by a person younger than himself, (b) produces direct evidence of discriminatory intent, or (c) produces statistical evidence of discriminatory conduct." 464 F.Supp. at 363. Thus, in *Sears*, the Court replaced one element of the previously enunciated Fifth Circuit test, the requirement that the plaintiff be replaced by a member outside of the protected class, with the requirement that the plaintiff be replaced by a person younger than himself. Further, the Court added two additional methods of establishing a prima facie case, statistical evidence indicating discriminatory conduct, and direct evidence of discrimination. In *Sears*, the Court held that the plaintiff had successfully defeated the summary judgment motion by the presentation of statistical evidence.

Plaintiff argues that the test articulated in *Price* and other Fifth Circuit cases has been seriously eroded by the holdings in *McCorstin* and *Sears*. This court disagrees. In both *Sears* and *McCorstin*, the courts merely recognized other methods of establishing a prima facie case of age discrimination. Neither court abandoned the *McDonnell Douglas* test, but merely cautioned against its rigid application. The *McCorstin* Court explicitly stated that its discussion of other tests should "not be construed as a denunciation of the *McDonnell* test."

---

ployer was seeking to fill; (3) he was rejected despite his qualifications; and (4) the employer continued to seek applicants for the position after the plaintiff's rejection. Although *McDonnell* set the standards for establishing a prima facie case of racial discrimination in hiring, those factors have been adapted to apply to other types of employment decisions in the Title VII context.

4. In the absence of Eleventh Circuit authority, this court is bound to apply Fifth Circuit law.

5. 29 U.S.C. § 631(a) defines the group protected by the ADEA as those between the ages of 40 and 70.

621 F.2d at 754. The Court held that other tests are applicable in cases where the *McDonnell* test "was not intended to apply and, factually, cannot apply ..." 621 F.2d at 754. The implication of this statement is that the *McDonnell Douglas* test should be applied where appropriate.

Any doubts as to the continued vitality of the *McDonnell Douglas* standard should be resolved by the recent opinion of the Fifth Circuit in *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir. 1981) (Unit B). In *Williams*, the Court approved the concept of a flexible approach in determining whether a prima facie case had been established. In fact, the Court actually applied a different test in *Williams*, a case involving a reduction in force.[6] However, the Court explicitly stated that "we will, of course, apply the *Price* elements in proper cases ..." 656 F.2d at 128. Moreover, although the Court did not apply the four-pronged test in the *Williams* case, the test was applied to another case decided on the same day, *Ford v. General Motors Corporation*, 656 F.2d 117 (5th Cir. 1981) (Unit B). In *Ford*, a "failure to promote" case, the Court noted that the *McDonnell Douglas* standard was applicable to the case, *see* 656 F.2d at 118, n.2, and held that the plaintiff had failed to establish a prima facie case. Thus, from a review of *Williams* and *Ford*, it is clear that the *McDonnell Douglas* test maintains its viability in appropriate cases. As this is a straightforward "demotion" case, the court concludes that the *McDonnell Douglas* test is applicable.

Under the *McDonnell Douglas* test, the plaintiff in this case must show the following to establish a prima facie case: (1) that he is a member of the protected age group; (2) that he was demoted from a given position; (3) that his replacement was outside the protected age category; and (4) that he was qualified for the position. Applying this test to the case sub judice, the court is of the opinion that plaintiff has failed to establish a prima facie case. At least one element of the above test is missing from plaintiff's proof.

■ Plaintiff has not demonstrated that he was replaced by a person outside of the protected age group. In fact, plaintiff's replacement was only two years younger than plaintiff, and is clearly within the protected age group. Thus, this element is clearly not present. Even if the court applied the modified standard enunciated in *Sears*, i.e., that plaintiff show that he was replaced by a person younger than himself, it is doubtful that plaintiff could prevail. This court is of the opinion that the difference in plaintiff's age and his replacement's age, a mere two years, is insufficient to raise an inference of age discrimination. If Southern demoted Pace because of his age, it is unlikely that it would replace him with someone only two years his junior. Thus, this court concludes that plaintiff has failed to establish a prima facie case under the *Price* standard as he has not demonstrated that he was replaced by someone outside of the protected age group, or that he was replaced by someone substantially younger than himself so as to raise an inference of age discrimination.[7]

In sum, the court concludes that plaintiff has not established a prima facie case of age discrimination under the standards adopted by the Fifth Circuit in *Price*. Spe-

---

**6.** Application of the new test resulted in a decision that plaintiffs had failed to establish a prima facie case.

**7.** Although not addressed by the parties, it appears that a second element of the test may also be missing from plaintiff's evidence. Plaintiff has not set forth any proof that he was qualified for the position from which he was demoted. Although the fact that he held the position at one time could raise a presumption as to his qualification, the reasons for his demotion articulated by Southern would rebut any such presumption. The only proof regard-

ing plaintiff's qualifications, other than his deposition statement, consists of Southern's evidence that he lacked sufficient administrative skills for the position. Although there is evidence in the record that plaintiff possessed adequate technical knowledge for the position, apparently the job also required some degree of administrative proficiencies in which defendant has indicated plaintiff was lacking. Thus, as plaintiff has failed to proffer proof of his qualifications for the position, this element of a prima facie case has not been established.

cifically, plaintiff has failed to show that he was replaced by a person outside of the protected group.

Although the court has reviewed plaintiff's case under the test set forth in *Price*, it does not appear that a different result would obtain under other tests for establishing a prima facie case. In *Moore v. Sears Roebuck & Company, supra*, the Court concluded that a prima facie case could be presented by statistical evidence indicating discriminatory actions. In this case, plaintiff has failed to proffer sufficient statistical evidence to indicate a pattern of discriminatory treatment of older employees. In support of his case, plaintiff points out that there were ten demotions of members in the protected class within his department within the last 15 years. Out of the 10 demotees, plaintiff states that 8 were replaced by individuals younger than them. However, defendant points out that only 4 of the 10 demotees were replaced by individuals outside of the protected class. Moreover, defendant points out that several individuals within the protected class were promoted during this period of time.[8] The court is of the opinion that the statistical evidence proffered by plaintiff is insufficient to establish a prima facie case of age discrimination.

First, the statistical sample is not large enough to allow any reasonable inferences to be drawn therefrom. Ten demotions over a period of 15 years does not present a sample from which valid conclusions can be drawn. However, even assuming that there was a valid statistical sample, no pattern of discriminatory treatment has been demonstrated. The fact that 4 out of 10 demotees were replaced by individuals outside of the protected class does not demonstrate a pattern of discriminatory treatment for older employees. *See Wade v. New York Telephone Company*, 24 E.P.D. ¶ 17,637.

A prima facie case of age discrimination can also be established by direct evidence of discriminatory conduct, that is, a "smoking gun." For example, if there were some job advertisement indicating an age preference or a note indicating some age preference then such evidence alone would be sufficient to establish a prima facie case. However, the record is clear that there is no such direct evidence in this case. The only evidence of age discrimination is plaintiff's belief that he was demoted because of his age since he could think of no other reason. This is insufficient to establish a prima facie case of age discrimination.

### CONCLUSION

For the foregoing reasons, the court has concluded that plaintiff has failed to establish a prima facie case of age discrimination under any available theory. Thus, defendant's motion for summary judgment is hereby GRANTED. The clerk is DIRECTED to enter judgment accordingly.

---

8. In fact, plaintiff was promoted during the 15-year period.