[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 355 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 356 
Appellants Sally Burroughs and Gladys Thomas filed separate complaints in the Circuit Court of Tuscaloosa County, alleging that appellee, The Great Atlantic and Pacific Tea Company (A 
P), had discriminated against each in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, etseq. (1982). Appellants alleged that A P committed two independent and actionable types of discrimination: first, reducing the appellants to part-time status due to their age; and second, discharging appellants because they filed ADEA actions concerning the reduction in employment.
Defendant moved for partial summary judgment on the theory that the charges of age discrimination had not been timely filed with the Equal Employment Opportunity Commission (EEOC). Plaintiffs responded to the motions. The court granted summary judgment for the named individual defendant Jim Oswalt. No appeal was taken from that ruling. A P's motion for summary judgment was denied on December 29, 1982. A P then removed the two cases to the United States District Court, which remanded both cases to the state court.
The cases were then consolidated and tried without a jury. The trial judge did not write an opinion or make findings of fact. On August 12, 1983, the trial judge entered this order on the case action summary sheet: "The Court having heard the evidence in this case, finds for the defendant with costs taxed to the Plaintiff." From this judgment, plaintiffs appealed to the Court of Civil Appeals. The appeal was transferred to this Court on February 23, 1984.
 I. Facts
Appellants Thomas and Burroughs both worked for A P for more than twenty-five years. Each spent most of her career at the A P store in the Parkview Shopping Center in Tuscaloosa. Thomas was first employed in 1956, while Burroughs was first employed in 1951. Both were grocery checkers or cashiers. Until their dismissals, which are the subject of this appeal, neither had been disciplined. Thomas was born August 6, 1934; Burroughs was born December 19, 1926.
Appellee A P, once the nation's largest retail food chain, has experienced shrinking sales and profits since the early 1970's. A P has recently closed over 75% of its stores in an effort to become profitable. In 1980, A P lost $43 million and faced the prospect of bankruptcy. In order to save additional money, A P initiated a program in late 1980 to reduce the number of full-time employees.[1] The manager of the Parkview A P was directed to reduce full-time employees. *Page 357 
On November 3, 1980, appellants and nine other Parkview checkers were reduced to part-time status. Of the other nine, only one was over 40 years old. Appellants earned $7.16 per hour when reduced to part-time. All the other employees reduced to part-time earned $7.16 per hour or more. Although the hourly wage rate was unaffected by the change of status, fringe benefits, including vacation, hospital pay, health insurance, life insurance, and pension plan participation, were affected.[2]
Initially, appellants' work hours were reduced to 27 per week. Gradually, these were further reduced. By the spring of 1981, appellants were working 12-15 hours weekly. The other nine reduced checkers also found their hours further reduced. A P presented evidence at trial that appellants worked more hours than most of the other checkers. After appellants filed ADEA charges with the EEOC on May 29, 1981, their hours worked were increased, but were still irregular.
In March 1982, Dayton Dawkins became manager of the Parkview A P. He was aware of the ADEA complaints filed by appellants. In April, he began to monitor appellant Burroughs's grocery purchases for coupon misuse. Dawkins monitored Burroughs only when she checked her groceries out with Thomas. He checked three times to see if she had merchandise for each coupon redeemed. On each occasion, the merchandise and coupons matched. Dawkins did not check coupons against merchandise for anyone else. Dawkins testified that he investigated Burroughs because another cashier, Dana Coussement, reported that Burroughs had tried to get her to redeem coupons without purchasing the merchandise.
On April 19, 1982, Dawkins observed Burroughs shopping after work. He testified that she had a large number of coupons. Dawkins instructed Betty Day, the head cashier, to monitor the purchases of Burroughs on the display unit located in the office.
The monitoring showed that Burroughs presented 18 coupons with her purchases on April 19, 1982. To determine if each coupon used by Burroughs matched up with a purchase, Dawkins took the coupons he found in the cash register drawer of cashier Thomas and matched the prices against merchandise in the store. Dawkins testified that 14 coupons did not match up with merchandise purchased by Burroughs. These coupons had a face value of about $5.00.
Dawkins consulted with his supervisor, Ernest Broderick. Each spoke with appellants. Burroughs denied any wrongdoing. Thomas admitted that Burroughs had checked groceries through her lane and misused coupons for years. Other cashiers admitted that Burroughs had attempted to misuse coupons when she checked out with them. Both appellants were suspended on May 12, 1982. On May 31, 1982, both Thomas and Burroughs were fired for misuse of coupons. A P has a graduated system of discipline. No lesser sanction was imposed.
The A P coupon policy apparently prohibits the redeeming of coupons without the simultaneous purchase of merchandise. Three checkers testified that they regularly violated the coupon policy by giving credit for earlier purchases by customers (for example, the day before) or in situations where the item was not purchased. Several checkers testified that they had on occasions accepted coupons from Burroughs in violation of the policy, although they later refused to do so. One checker testified that she would probably violate the policy again the next day.
In the A P southeastern region (Alabama, Florida, Georgia, Kentucky, Mississippi, and Tennessee), only two other checkers have been discharged for misuse of coupons. Geneva Thomson was discharged after redeeming approximately 130 coupons worth $95.00 in violation of company policy. Phyllis Bennett was discharged after *Page 358 
redeeming 319 coupons at one time in violation of A P policy. However, these two employees were discharged after appellants were, but before the trial of this case. Prior to the discharge of appellants, no A P checker in the southeastern region had ever been discharged for coupon misuse.
The A P coupon policy is contained within the written company rules. Those rules provide in pertinent part:
 "VIOLATION OF THE FOLLOWING COMPANY RULES AND/OR CRIMINAL STATUTES, WHEN COMMITTED ON COMPANY PROPERTY, WILL RESULT IN YOUR SUSPENSION OR DISMISSAL FROM THE COMPANY.
". . . .
 "ACCEPTANCE OF GIFTS OR GRATUITIES FROM A VENDOR (ON OR OFF COMPANY PROPERTY).
". . . .
 "MISAPPROPRIATION OF FUNDS, UNAUTHORIZED REDEMPTION OF COUPONS OR REFUNDS BY A CASHIER OR PERSON AUTHORIZED TO ACT AS A CASHIER.
 "AIDING, ABBETTING OR ENCOURAGING ANOTHER EMPLOYEE TO VIOLATE THESE RULES.
 "FAILURE OF ANY EMPLOYEE IN A SUPERVISORY POSITION TO ENFORCE ANY OF THE LISTED REGULATIONS.
". . . .
"VIOLATION OF THE EMPLOYEE PURCHASING PROCEDURE."
Although A P presented testimony indicating that the application of the rules was based on a case-by-case discretionary review, no evidence was presented to suggest that the non-supervisory employees were notified of the informal policy to the extent it differed from the written rules.
While he was the store manager, Dayton Dawkins violated several A P policies without being fired. These violations were: 1) he accepted a gift of candles from a vendor; 2) he rang up his own merchandise; and 3) he allowed his wife to sign a ticket for merchandise instead of paying for it at the time. Dawkins was not disciplined for these rule violations.
 II. Issues
Three issues are raised in this appeal. First, did appellants satisfy the time requirements of ADEA when they filed their charges with the EEOC? Second, was the trial court's finding that A P's reduction of appellants to part-time status was not based on age clearly erroneous and against the great weight of the evidence? Third, was the trial court's finding that appellants were not discharged in retaliation for filing ADEA complaints clearly erroneous and against the great weight of the evidence?
 III. Timeliness of Charges
In order to preserve an ADEA action, a plaintiff must file administrative charges of discrimination with the EEOC "within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 626 (d)(1) (1982).
Appellants were each reduced to part-time status on November 3, 1980, and did not file EEOC charges until late May 1981, more than 200 days later. A P argues that the appellants' claims were time barred for failure to satisfy the requirement of the statute.
Appellants contend that the reduction to part-time status constitutes a continuing violation for purposes of tolling the running of the 180-day period. Although no reported cases involving ADEA have considered the issue, a number of cases considering the similar 180-day requirement under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.
(1982), have reached this question. The United States Courts of Appeals for the old Fifth Circuit and the new Eleventh Circuit have adopted Title VII cases as precedent for ADEA cases. Cokev. General Adjustment Bureau, Inc., 640 F.2d 584 (5th Cir. 1981) (en banc). See also, Anderson v. Savage Laboratories,Inc., 675 F.2d 1221 (11th Cir. 1982). *Page 359 
Title VII cases expressly recognize the concept of a continuing violation. In Clark v. Olinkraft, Inc.,556 F.2d 1219, 1222 (5th Cir. 1977), the court recognized that the failure to promote a plaintiff is a continuing violation which tolls the time for filing. Because the management assigned varying hours to the appellants from week to week, appellants contend that each periodic decision by management constituted a continuation of the original decision. We agree. Appellants' continued involvement as part-time employees makes this case distinguishable from those cases where the failure to hire does not constitute a continuing violation. See, e.g., East v.Romine, Inc., 518 F.2d 332 (5th Cir. 1975). The weekly assignment of hours by A P's Parkview management constituted continuous maintenance of allegedly illegal employment practices, extending the time for filing charges until 180 days after the last occurrence. Downey v. Southern Natural Gas Co.,649 F.2d 302, 304 (5th Cir. 1981); Gonzales v. Firestone Tire Rubber Co., 610 F.2d 241, 249 (5th Cir. 1980).
A P further argues that appellants failed to file timely administrative charges regarding their retaliatory discharge complaints. Appellants amended their original complaints in court to allege they had been fired in retaliation for filing ADEA charges and simultaneously filed amendments with the EEOC, more than 180 days after the discharge. An additional EEOC filing was unnecessary; the right to judicial relief for the retaliation charge grew out of the first action. See, Pettwayv. American Cast Iron Pipe Co., 576 F.2d 1157 (5th Cir. 1978) (court impliedly allowed additional damages from on-going discrimination without additional EEOC filings). We find that appellants timely filed charges with the EEOC.
 IV. Reduction to Part-time Status
The trial court, sitting without a jury, heard ore tenus evidence, and found for A P on all counts. On appeal, this Court will review the trial court's findings with "a presumption of correctness . . . if these conclusions were based totally or in part on oral testimony. This Court will not disturb the trial court's conclusions unless they are clearly erroneous and against the great weight of the evidence." FirstAla. Bank of Montgomery, N.A. v. Martin, 425 So.2d 415, 425-26
(Ala. 1982). "Where the evidence before the trial court [is] undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts." Stiles v. Brown, 380 So.2d 792, 794 (Ala. 1980).
The elements of proof in an ADEA action have recently been announced by the United States Court of Appeals for the Eleventh Circuit. In order to make out a prima facie case, plaintiff must show
 "`facts sufficient for a reasonable jury to infer that discrimination has occurred.' McCorstin v. United States Steel Corp., 621 F.2d 749, 754 (5th Cir. 1980). Such an inference is generally established by proving that the plaintiff 1) belongs to the statutorily protected age group; 2) was qualified for the job; 3) was discharged; and 4) was replaced by a person outside the protected age group."
Anderson v. Savage Laboratories, Inc., 675 F.2d 1221, 1223-24
(11th Cir. 1982).
"[O]nce a prima facie case has been established, the employer has the burden of producing evidence tending to show that the employee's discharge was for a legitimate, nondiscriminatory reason such as good cause." 675 F.2d at 1224. If the employer comes forward with a nondiscriminatory reason, then the employee "must show by a preponderance of the evidence that the employer's asserted legitimate reason for the discharge is merely pretextual." Id. The nondiscriminatory defense must be one allowed by the ADEA.
Plaintiff need not show that age was the sole reason for his discharge or reduction, "but only that age was a determinative factor in the employer's decision to fire him." Id. at 1224. See, Pace v. Southern Ry. Sys., 701 F.2d 1383, 1387 *Page 360 
(11th Cir. 1983). Plaintiff must "produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it." Williams v. General Motors Corp.,656 F.2d 120, 129-30 (5th Cir. 1981).
Regardless of these elements and burdens, plaintiff still carries the ultimate burden of proof. In a Title VII case, the United States Supreme Court stated, "The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." The Court added, "The plaintiff retains the burden of persuasion." Texas Dep't ofCommunity Affairs v. Burdine, 450 U.S. 248, 254-55, 256,101 S.Ct. 1089, 1094, 1095, 67 L.Ed.2d 207 (1981).
Applying these rules to the present case, we conclude that the trial court did not err in finding that A P did not discriminate against appellants on an age basis in the time reduction decision. The undisputed evidence shows that A P eliminated all full-time checker positions in order to increase efficiency and reduce costs. Eight of the eleven reduced employees were younger than 40 years old. In scheduling appellants' work hours, management gave both of them as many hours as other reduced workers, or more hours. A P did not hire full-time checkers to replace appellants; instead, A P hired part-time workers who averaged fewer hours per week than appellants. On the basis of this evidence, it would appear that A P did not discriminate at all with respect to appellants. Among all the checkers, appellants were treated most favorably.
Testimony was presented at trial that suggested A P targeted appellant Burroughs for mistreatment. This issue was disputed at trial and cannot serve as a basis for reversal. Even so, appellants did not present any evidence that age discrimination was the basis for, or a factor in, A P's policies or decisions. With the burden of persuasion under the ADEA always resting with plaintiff to prove age was a determinative factor in the employment decision, this Court will not reverse the trial judgment when the evidence is in dispute. We find substantial evidence to support the trial court's conclusion that A P did not discriminate in the time reduction decision.[3]
 V. Retaliatory Discharge
Appellants alleged in their amended complaints that they were discharged in retaliation for having filed ADEA charges. Appellants contend that A P's reason for discharge — abuse of the coupon policy — was a pretext for discriminatory behavior. The trial court apparently found for A P on these issues.[4]
The ADEA makes it unlawful for an employer to discharge an employee because he has filed an age discrimination charge.29 U.S.C. § 623 (d) (1982). To establish a case under Title VII's analogous provision, 42 U.S.C. § 2000e-3 (a) (1982), plaintiff must establish by a preponderance of the evidence that 1) he engaged in protected activity; 2) he suffered an adverse employment action; and 3) participation in the protected activity was causally connected to the adverse employment action. Dickerson v. Metropolitan Dade County, 659 F.2d 574,580 (5th Cir. 1981). Participation *Page 361 
in a protected activity includes filing an employment discrimination claim. Appellee concedes that appellants satisfied elements one and two.
When an employee is fired for violating a work rule, the employee can prove his firing was pretextual by showing "either that he did not violate the work rule or that, if he did, other employees not within the protected class who engaged in similar acts were not similarly treated." Anderson v. SavageLaboratories, Inc., 675 F.2d 1221, 1224 (11th Cir. 1982). Appellants argue that other employees committing similar violations were treated dissimilarly. We will treat each appellant's claim in turn.
There was substantial evidence at trial that appellant Burroughs frequently violated A P's coupon work rule. A P presented evidence that Burroughs had given coupons to a number of the checkers when she did not have the matching merchandise. Burroughs benefited financially from receiving credit for these coupons. Although Burroughs denied long-term abuse and although the abuse on April 19, 1982, amounted to only $5.00, A P did present sufficient evidence to prove a prima facie case of a serious violation of its work rule.
Burroughs further argues that other checkers had not been fired for coupon abuse. A P presented two examples of checkers who were discharged for serious coupon abuse. One checker improperly redeemed $95.00 in coupons, while the other checker improperly redeemed 319 coupons. Burroughs contends that her $5.00 abuse was not comparable. However, the $5.00 abuse was not the sole violation; the evidence at trial revealed years of abuse. The trial court could have properly concluded that Burroughs was not treated differently.
Burroughs finally contends that the evidence shows work rule abuses by the store manager, Dayton Dawkins, which did not result in discharge. A P admits that Dawkins rang up his own purchases on two occasions, that Dawkins had allowed his wife to sign a ticket for merchandise without paying for it at the time, and that Dawkins accepted candles from a vendor. The company work rules clearly state that these acts "WILL RESULT IN . . . SUSPENSION OR DISMISSAL FROM THE COMPANY." Even so, A P presented testimony that these violations were not severe enough to justify dismissal. In addition, Dawkins paid for his purchases and his wife's ticket, and the gift candles were displayed at the store. The limited number of violations and extenuating circumstances, coupled with the discharge of two other checkers, provided enough evidence to permit a trial court finding that Burroughs was treated similarly to other employees who engaged in similar acts. This finding was not clearly erroneous and against the great weight of the evidence. We affirm as to Burroughs's claim for retaliatory discharge.
In contrast, appellant Thomas's coupon abuse was entirely different from that of Burroughs. Thomas did not financially benefit from the abuse. Her abuse was different in degree as compared to Burroughs's. Thomas had earlier complained to the head cashier, Betty Day, about Burroughs's attempts to get her to take coupons without the corresponding merchandise. Day told Thomas that she should not accept the coupons. Assuming Burroughs was violating the coupon policy and Day knew it, the head cashier was obligated under the work rules to discipline Burroughs following this report. The work rules provide that "FAILURE OF ANY EMPLOYEE IN A SUPERVISORY POSITION TO ENFORCE ANY OF THE LISTED REGULATIONS" shall constitute a dischargeable offense. Rather than back up Thomas, the Parkview A P management pushed the responsibility on to the employee. Thomas does not, however, contend that Day's action waived the work rule or estopped A P from enforcing it.
A P argues that it presented evidence of similar acts committed by checkers who were discharged. The two discharged checkers committed substantial coupon *Page 362 
abuse for financial reward. There was no evidence that the checkers who accepted the coupons from the two discharged employees were themselves discharged. Indeed, A P presented no evidence that any other employee was ever fired for improperly accepting coupons. On the other hand, Thomas presented substantial evidence that other checkers who participated in abuse of the coupon policy similar to Thomas's abuse were not discharged. The evidence discloses that three other checkers improperly redeemed coupons from Burroughs. Moreover, although they ultimately stopped improperly accepting coupons from Burroughs, the testimony at trial revealed that the coupon policy is routinely ignored by checkers in other circumstances. Regular customers are often granted credit for claimed past purchases when presenting a coupon on a later visit. One checker testified she would probably violate the policy again "tomorrow." A P does not argue that improper redemption of coupons from customers is different in kind from improper acceptance of coupons from fellow employees.
Thomas's claim is further supported by the undisputed evidence that the A P management investigated Burroughs only when she checked out with Thomas. The manual and electronic monitoring was specially directed and was not a part of a store-wide investigation of coupon abuse.
Finally, Thomas argues that A P overlooked more severe violations of the work rules committed by Dawkins. We have treated this issue earlier and have found some evidence to suggest that A P's treatment was not inappropriate. Even so, the fact that Dawkins was not discharged is proof that the work rules are not applied literally in all cases. Certainly, A 
P's treatment of Dawkins does not in any sense support A P's position that Thomas was treated the same as other employees committing similar violations.
In reviewing the record, we find that A P presented no evidence that any checker was ever fired for improperly accepting coupons. On the other hand, Thomas presented substantial evidence of selective enforcement of the coupon policy and other work rules. Under these facts, the trial court should have found that Thomas was not similarly treated compared to other employees not within the protected class who engaged in similar acts.
The trial court's decision for A P on Thomas's ADEA retaliatory discharge claim was clearly erroneous and against the great weight of the evidence.
 VI. Conclusion
This Court affirms the trial court's judgment as to appellant Burroughs's claims, and affirms as to appellant Thomas's claim of age discrimination in A P's decision to reduce her to part-time status. However, we find that the trial court erred as to Thomas's retaliatory discharge claim; as to this claim, we reverse and remand this cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
ADAMS, J., concurs in all aspects, except that he dissents as to the affirmance with respect to Burroughs's discharge claim.
[1] Witnesses for A P explained that A P had high labor costs and operational inflexibility because 60% of its workforce was full-time, compared to an industry average of 30%. Part-time employees cost less in direct and fringe benefits than full-time employees. In addition, part-time employees can be scheduled for peak demand periods, while full-time employees work a standard 40-hour week.
[2] Employees working less than 1000 hours per year (approximately 20 per week) lose their right to further participation in the A P pension plan.
[3] We need not reach the issue of A P's "business necessity" defense, because appellants failed to prove the issue of discrimination in a clear and undisputed manner. We note that recent decisions have rejected cost savings as a defense and now require proof of a compelling need in order to maintain an employment practice which is otherwise illegal under the ADEA. See, e.g., Leftwich v. Harris-Stowe State College,702 F.2d 686, 692 (8th Cir. 1983).
[4] Although A.R.Civ.P. Rule 52 makes discretionary the issuance of written findings of fact when the trial judge sits as factfinder, we observe that written findings would be very helpful in this kind of case. Whenever the cause of action involves multiple elements or novel concepts, or both, the appellate process would be substantially aided by written findings.