**Carl K. COOPER, Plaintiff,**

v.

**COOK PAINT & VARNISH COMPANY, Defendant.**

**No. 82–0648–CV–W–1.**

United States District Court, W.D. Missouri, W.D.

May 3, 1983.

Joseph Y. DeCuyper, Snowden & DeCuyper, Kansas City, Mo., for plaintiff.

Linda J. French, John R. Phillips, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOHN W. OLIVER, Senior District Judge.

### I. *Introduction*

Plaintiff's action under the Age Discrimination in Employment Act, 29 U.S.C. §§ 216, 261 *et seq.,* 621 *et seq.,* and 630, was tried as a jury-waived case. Counsel for the parties, in a most commendable manner, agreed on a pretrial stipulation under which 53 separate facts were admitted in separately numbered paragraphs. In addition, other facts contained in the proposed findings of fact filed by the respective parties were admitted pursuant to post-trial procedures directed by the Court. The parties also filed their respective proposed conclu-

sions of law and trial briefs immediately before the commencement of the trial.

Pursuant to this Court's standard procedures, defendant proposed in its pretrial filing that we make 73 separate findings of fact. Defendant, in its post-trial filing, proposed that we make 5 additional findings of fact. Plaintiff, in his pretrial filing, proposed that we make 49 findings of fact. Plaintiff elected not to make any post-trial filing that proposed that we make any additional findings of fact. Both parties, as would be expected, support various of their proposed findings of fact by their respective citation of particular paragraphs of the stipulation. Defendant has proposed that all 53 paragraphs of the stipulation be adopted as specific findings of fact; plaintiff has proposed that 21 paragraphs of the stipulation be so adopted.

Our ultimate finding that plaintiff, under all the facts and circumstances, has failed to carry the burden of proof imposed by the law applicable to his claim, makes it unnecessary for this Court to state any findings of fact in regard to any issues other than those related to defendant's alleged liability. It should be further noted that the parties contend that various of the facts contained in particular paragraphs of the stipulation, while true, are nevertheless neither relevant nor material and that such paragraphs of the stipulation should therefore not be adopted as a particular finding of fact to be made by this Court in its determination of the case.

The findings of fact made in the next part of this memorandum opinion will reflect the particular rulings made in regard to the respective parties' relevancy and materiality objections. Our refusal to make a particular finding of the fact as proposed by one of the parties will reflect either that we have determined that the need of making such a finding has been mooted by our determination of the case in defendant's favor, or that the party's relevancy and materiality objection is sustained.

If a particular relevancy and materiality objection is overruled, we will make the finding of fact in the language proposed by the party, or in such modified form as we believe the finding of fact should be stated under the circumstances. We shall also state in a footnote the reason we believe a party's particular objection should be overruled.

For the convenience of counsel, and for the purpose of clarity in the event of appellate review, our findings of fact will generally follow the order of the findings of facts proposed by the defendant in its pretrial and post-trial filings. It is to be noted that the substantial majority of the findings of fact proposed by defendant which we adopt as our findings of fact are in exactly the same language counsel used in particular paragraphs of their stipulation. The citation of the particular paragraph of the stipulation to support a particular proposed finding of fact is contained in a parenthetical reference immediately following each particular finding of fact which this Court has adopted from the parties' stipulation.

All paragraphs of our findings of fact which do not have a citation to the stipulation immediately following that particular paragraph of our findings of fact will indicate that the finding of fact made in that particular paragraph was not stipulated to by the plaintiff. It will thus be clear that the findings of fact contained in paragraphs which are not followed by a parenthetical citation to the stipulation reflect this Court's findings of fact generally patterned either upon a particular additional finding of fact as proposed by one of the parties or still an additional finding of fact which the Court has made independent of any finding of fact that may have been proposed by either party.

## II. Findings of Fact

1. Plaintiff is a 58 year old male, adult citizen of the United States and was a resident of the State of Missouri at the time of the alleged discriminatory act and at the time his Complaint was filed. (Stipulation No. 1)

2. The Company is a corporation doing business within the Western District of Missouri at 919 East 14th Avenue, North Kan-

sas City, Clay County, Missouri and is an employer within the meaning of 29 U.S.C. §§ 216, 261 *et seq.*, 621 *et seq.*, 630. (Stipulation No. 2)

3. Plaintiff filed a charge of discrimination with the EEOC on or about March 5, 1982. (Stipulation No. 31)

4. Plaintiff filed a Complaint in the United States District Court for the Western District of Missouri, Western Division on August 13, 1982. (Stipulation No. 32)

4A. Plaintiff is a 1948 graduate of Springfield Draughon Business University in Junior and Higher Accounting and Calculating Machines.

4B. Plaintiff took an additional twenty-four hours in 1950–1954, Intermediate Accounting, Advanced Accounting, Cost Accounting, Federal Income Tax Principles and Business Management Principles, and other courses from Rockhurst College.

5. Plaintiff was employed by the United States Postal Office as a Postal Clerk from September, 1948 to May, 1949. (Stipulation No. 3)

6. Plaintiff was employed by Gustin-Bacon Manufacturing Company as an Accounting Clerk from May, 1949 to July, 1951. (Stipulation No. 4)

7. Plaintiff was employed by the Cook Paint & Varnish Company from July 17, 1951 to December 31, 1981. (Stipulation No. 5, as amended by agreement)

7A. Plaintiff's initial position with defendant was as Junior Accountant.

8. From July 17, 1951 to March 31, 1962, plaintiff's job title was Accountant. (Stipulation No. 6)

9. From April 1, 1962 to May 31, 1978, plaintiff's job title was Accounting Manager. (Stipulation No. 7)

10. On June 1, 1978 plaintiff's job title was General Accounting Supervisor. (Stipulation No. 8)

11. At the time of termination of plaintiff's employment, plaintiff was the General Accounting Section Supervisor. (Stipulation No. 26)

11A. Throughout his employment with defendant, plaintiff performed his duties in a satisfactory, competent and dedicated manner.[1]

12. Since 1979 the Company has experienced serious financial difficulties.

13. In 1981 the Company's management decided to divest the Company of its remaining Trade Sales Division (retail branches) for economic reasons. Defendant's Exhibit 41 established that defendant began closing some of its then 124 retail branches as early as 1977. It closed a net of 6 branches in that year; a net of 10 retail branches in 1978; a net of 43 retail branches in 1979; and a net of 5 retail branches in 1980. By the end of 1980, defendant still had 60 retail branches. Beginning in 1981, after the decision of complete divestiture was made, defendant opened 1 retail branch (for reasons not clear from the evidence), but proceeded to close all the then remaining 61 retail branches during 1981 and 1982, thus implementing the 1981 divestiture decision established by the evidence.

14. The 1981 Trade Sales (retail branches) divestiture decision, considered in light of the defendant's overall financial difficulties, required at least a $100,000 reduction in budget for defendant's Finance Division. (See page 10 of Roepke deposition.) Implementation of that projected budget for the Finance Division obviously required a reduction in personnel allocated to that Division of defendant's business.

[1]. The President of the defendant Company wrote plaintiff the following letter on July 20, 1981 (Plaintiff's Exhibit No. 17):

Dear Carl:

July 17th marked your 30th anniversary with Cook Paint. Please accept my personal congratulations.

Your dedication and effort have helped us become a leader in our industry. I'm sure you join me in setting our sights on greater accomplishments in the future.

On behalf of us all, let me say "thanks" for serving these 30 years as an important member of our Cook Paint team.

15. On September 1, 1981 the Finance Division had 80 employees. (Stipulation No. 21, as amended by agreement)[2]

16. On December 31, 1981 the Finance Division had 65 employees. (Stipulation No. 22, as amended by agreement)

17. March 5, 1982 the Finance Division had only 58 employees. (Stipulation No. 23)

17A. Between September 1, 1981 and March 5, 1982, the percentage of exempt employees 40 and over working in the Company's Corporate offices (in which group plaintiff was included) increased from 38.5% to 41.7%.[3]

17B. Between September 1, 1981 and March 5, 1982, the percentage of exempt employees 40 and over working in the Company's Finance Division (in which group plaintiff was included) increased from 35.0% to 36.2%.

17C. The Company's reduction in force did not adversely impact upon employees within the protected age category.

18. Lyle Stone informed plaintiff on November 16, 1981 that plaintiff's position was being eliminated. (Stipulation No. 18)

19. In paragraph 19 of its proposed findings of fact, defendant proposed that we find that "Plaintiff's job was eliminated as a result of the economic reduction in force." While we believe that the greater weight of the credible evidence establishes that the defendant is entitled to a finding in the language proposed by defendant, and we so find, we also believe that it is appropriate

**2.** Plaintiff objected on the ground of relevancy to the findings of fact stated in this paragraph and in paragraphs 16 and 17, all of which reflect the reduction in the number of employees in defendant's Finance Division from 80 in September, 1981 to 65 in December, 1981 and to 58 as of March 5, 1982. We find and conclude that those reductions in force are most relevant in that they show the impact that defendant's divestiture decision and its serious financial difficulties had upon the declining number of persons defendant could employ in its Finance Division under the circumstances.

Plaintiff's relevancy objection to the undisputed facts stated in paragraphs 15, 16, and 17 is inconsistent with plaintiff's introduction of Plaintiff's Exhibit Nos. 27, 28, 29, 30 and 31. The various organizational charts shown on those exhibits establish the same substantial reduction of both the number of supervisory positions and the overall reduction of the number of employees in the Finance Division after the defendant's financial difficulties became increasingly serious in 1979.

**3.** Paragraphs 17A, 17B and 17C of our findings are based on the statistical data adduced in evidence as Defendant's Exhibits Nos. 30, 31 and 32. The supporting data attached to Defendant's Exhibits Nos. 30 and 31 consisted of lists which set forth (1) the name of the defendant's employee; (2) the date of that person's employment; (3) the date of the employee's birth; (4) the employee's age; and (5) the date the employee was discharged because of a reduction in force ("RIF").

Because one of plaintiff's witnesses, Douglas Shipe, testified that he had seen a list of defendant's employees which stated the names and the ages of the employees *before* plaintiff was terminated, our attention was immediately

focused at trial on Plaintiff's Exhibit Nos. 22, 23 and 24 which were, indeed, lists of the defendant's Finance Department employees which set forth (1) the name of the defendant's employee; (2) the date of that person's employment; (3) the date of the employee's birth; and (4) the employee's age. (Plaintiff's exhibits did not, however, have a column for the date of the employee's termination (RIF).

Inquiry at trial, examination of the January 20, 1982 depositions of James Florence and John Kelly, and the trial testimony of John Kelly established beyond any doubt that Plaintiff's Exhibits Nos. 22, 23, and 24 were simply copies of a preliminary draft of a part of the supporting data later attached to Defendant's Exhibit No. 31, all of which had been originally prepared by John Kelly long *after* plaintiff's discharge, solely for use in response to plaintiff's EEOC discrimination claim.

It should be added that neither plaintiff nor plaintiff's counsel ever contended or ever attempted to have the Court believe, that Plaintiff's Exhibit Nos. 22, 23 and 24 were in existence *before* plaintiff was discharged. We close our discussion of whether any pre-termination list of employees ever existed by simply stating that we expressly reject Douglas Shipe's testimony concerning the existence of a pre-termination list and his other testimony concerning statements that he testified that he heard various of the defendant's witnesses make in regard to age. Douglas Shipe's testimony was not corroborated by any other witness. His testimony was in direct conflict with that of many other witnesses. In short, the question of Douglas Shipe's credibility as a witness is expressly ruled in favor the defendant.

that we state the reasons we make that key finding of fact in defendant's favor.[4]

We therefore find that the following factual circumstances support our ultimate finding that plaintiff's job was eliminated as a result of the economic reduction in force.

Plaintiff's personnel file, Plaintiff's Exhibit No. 25, page 53, establishes that on June 5, 1978 the Director of the Finance Division announced that plaintiff was being promoted from his position as an "Accounting Manager" to the position of "General Accounting Supervisor." The June 5, 1978 announcement stated that plaintiff, in his new position, "will supervise and be responsible for the efficiency of Order Processing, Sales Control and Accounting." Plaintiff's Exhibit No. 28, defendant's August, 1978 Finance Division Organizational Chart, clearly shows plaintiff's new position as Supervisor of the General Accounting Section and also reflects that the respective unit Supervisors of "Order Processing," "Sales Control," and "Accounting" were under plaintiff's supervision.

The June 5, 1978 announcement and the August, 1978 organizational chart also show that on the same day plaintiff was appointed Supervisor of the General Accounting Section, Craig Roepke was appointed as the Supervisor of the General Accounting Unit of the General Accounting Section, under plaintiff's supervision, with responsibility "for accurate and timely entry of all account records into the general ledgers of the Company."

Plaintiff's Exhibit No. 11 establishes that on February 20, 1979 Craig Roepke was appointed Assistant Controller and that Larry Courtney was appointed to take over Craig Roepke's old position. See also Plaintiff's Exhibit No. 29, the February, 1979 Finance Division's organizational chart which, when compared with the August, 1978 organizational chart (Plaintiff's Exhibit No. 28), shows Larry Courtney's transfer from the Unit Supervisor position in the Cost Accounting Section to the position of Unit Supervisor position in the General Accounting Section. That exhibit also reflected Craig Roepke's promotion to the newly created position of Assistant Controller from his old position as Unit Supervisor in the General Accounting Section.

Plaintiff's Exhibit 30, the September, 1981 organizational chart for the Finance Division, when considered in light of the deposition testimony of Craig Roepke, shows that Lyle Stone had succeeded Jim Florence as Director of the Division; that Craig Roepke had succeeded Stone to become Controller; and that 13 positions shown on the February, 1979 organizational chart (Plaintiff's Exhibit No. 29) had been entirely eliminated. The eliminated positions included the position of Assistant Controller and the elimination of the position of Supervisor of Order Processing Unit from the General Accounting Section. That exhibit also shows that the Section of Internal Audit was elevated to the higher managerial level of a Department, which reported directly to the Director of the Finance Division, rather than reporting to the Tax & Insurance Department, as shown on the February, 1979 organizational chart.

Defendant's Exhibit No. 21, dated November 16, 1981, reflected a further reduction in force in the Finance Department. That exhibit and the testimony at trial established that Lyle Stone advised plaintiff on November 16, 1981 that after evaluation of the various positions within the Finance Division, he had determined that "there was not a need for both accounting section supervisor and an accounting unit supervisor" and that "therefore, I was eliminating the position of accounting section supervisor." Plaintiff's Exhibit No. 18 establishes that two days later, on November 18, 1981, plaintiff circulated a memorandum to the Accounting Department in which he stated:

---

4. We believe it is particularly appropriate that we do so in light of our express refusal to make the findings of fact proposed by plaintiff in paragraphs 8, 9, 10, 11, 12, 13, 15, 16 and 42 of plaintiff's proposed findings of fact in regard to the nature of the duties performed by plaintiff during the period of his employment by defendant.

For your information management has eliminated my position as Section Supervisor of the Accounting Department. I will be leaving Cook Paint & Varnish Company no later than December 31, 1981.

I want to thank you for your cooperation and help over the past years. Larry Courtney will continue to be your Supervisor and I hope you will continue to give him the same support that you have given me.

Thank you very much for service and dedication.

We find that the greater weight of the credible evidence established that defendant, in its reduction of the number of persons to be employed in the Finance Division, appropriately directed its attention to the elimination of particular positions rather than the discharge of particular persons. See, for example, pages 11 and 14 of the deposition testimony of Craig Roepke, the substance of which was corroborated by other witnesses at the trial.

In the same manner, we find that defendant established by the greater weight of the evidence that plaintiff's age was not a factor which defendant considered in making its determination that the position of Supervisor of the General Accounting Section of the Finance Division was to be eliminated.

Plaintiff's Exhibit No. 31, the April 1982 organizational chart of the Finance Division, while prepared after plaintiff's discharge, nevertheless shows the elimination of additional positions within the Division and a further reduction in the persons employed therein. That exhibit shows that 3 of the former 5 first managerial level positions were eliminated and that the functions which were formerly served by the Tax & Insurance Department, by the Controller's Department, and by the Internal Audit Department were concentrated under the new positions of Financial Analyst and Finance Manager. It is significant that Craig Roepke's position as Controller was one of the positions eliminated. Plaintiff's Exhibit No. 35, page 4, shows that on December 15, 1981, Craig Roepke was discharged—"job elimination/reduction in force."

The April, 1982 organizational chart also shows that all the third level managerial positions in the Finance Division were entirely eliminated and that a Tax Specialist position was substituted on the second managerial level in the place of the Financial Analyst position which was elevated to the first managerial level.

We find that the greater weight of the evidence clearly established that defendant's January 11, 1982 response (Plaintiff's Exhibit No. 25, page 4) to plaintiff's January 4, 1982 request for a Missouri Service Letter (Plaintiff's Exhibit No. 25, page 1) correctly and accurately stated the true reason for plaintiff's discharge. Defendant advised plaintiff that:

You were involuntarily terminated due to a reduction in work force which brought about an elimination of your position [as General Accounting Section Supervisor].

20. Plaintiff was not replaced.[5]

21. Plaintiff's last day of work was December 23, 1981. (Stipulation No. 19)

22. Plaintiff was terminated effective December 31, 1981. (Stipulation No. 20)

---

**5.** We expressly reject plaintiff's proposed findings of fact Nos. 37, 38 and 42 that proposed that we find that "Don Berkstresser assumed Plaintiff's duties as General Accounting Supervisor;" that "The duties of the Finance Manager were the same or substantially the same as the Plaintiff's duties as General Accounting Supervisor;" and that "Plaintiff was qualified for the position of Finance Manager ... in the Finance Division of Cook Paint & Varnish Company." Comparison of Plaintiff's Exhibit No. 5, which describes the functions of the position of Supervisor of the General Accounting Section, with Plaintiff's Exhibit No. 7, which describes the functions of the newly created position of Finance Manager, when considered in light of the credible testimony, supports our finding in paragraph 20 above that "Plaintiff was not replaced" and our rejection of paragraphs 37, 38 and 42 of plaintiff's proposed findings of fact.

23. At the time of termination of employment, plaintiff had worked for defendant for approximately thirty and one-half years. (Stipulation No. 24)

24. Seniority was not a factor in the reduction of personnel.

25. At the time of termination of employment by defendant, plaintiff was 57 years old. (Stipulation No. 25) .

26. Plaintiff's age was not a factor in his termination. See our discussion of the factors that led to plaintiff's termination in paragraph 19 above.

27. [No finding][6]

28. The Company articulated legitimate, non-discriminatory reasons for plaintiff's termination. We further find that those reasons were not pretextual.

29. At the time of plaintiff's termination, plaintiff was earning a monthly salary of $2,340. (Stipulation No. 35)

30. [No finding necessary][7]

31. [No finding necessary]

32. Don Berkstresser's 1981 salary as Internal Audit Supervisor was $2,585 a month.

33. Don Berkstresser's Internal Audit position was on a higher management level than plaintiff's.

34. Don Berkstresser's Internal Audit job did not require substantially equal work or responsibility as compared with plaintiff's job.

35. The Company's posting policy became effective September 1, 1982.

36. Prior to September 1, 1982 the Company posted some, but not all, jobs.

37. [No finding necessary]

38. [No finding necessary]

39. [No finding necessary]

40. Plaintiff had completed three seminars within the last 20 years:

| Seminar | Presented By | Year |
| --- | --- | --- |
| Cost Reduction | Lawrence Leiter | 1977 |
| Basic Principles of Management | In-House | 1980 |
| Data Processing for Non-Data Processing Managers | In-House | 1980 |

(Stipulation No. 11)[8]

41. [No finding necessary]

42. On July 14, 1977 James H. Florence evaluated plaintiff, indicating that plaintiff had reached his maximum level of advancement in the Accounting Department. (Stipulation No. 13)

43. In October, 1978 Lyle Stone evaluated plaintiff, indicating that he reached his level of advancement as Accounting Supervisor. (Stipulation No. 14)

**6.** Paragraph 27 of defendant's proposed findings of fact proposed that we find that "Plaintiff failed to establish a prima facie case of employment discrimination on the basis of age." Assuming that paragraph 27 proposed a finding of fact rather than a conclusion of law, we will follow our general practice of determining the merits of a Title VII or jury-waived ADEA discrimination case on the assumption that the plaintiff may have made a prima facie case under the circumstances of the particular case. We therefore will not make the finding proposed in defendant's paragraph 27.

**7.** In paragraph 30 of its proposed findings of fact defendant incorporated paragraph 44 of the stipulation which reflected the parties' agreement that Rebecca Welbern's salary was never as high as that of plaintiff. In a similar manner, paragraph 31 of defendant's proposed findings of fact incorporated paragraph 45 of the stipulation which reflected the parties' same agreement in regard to the salary of Chuck Townley.

Defendant obviously anticipated at the time it filed its proposed findings of fact before trial that the salaries of Rebecca Welbern and Chuck Townley would become an issue of fact in the trial of this case. Those issues, however, were not presented either at trial or in plaintiff's proposed findings of fact. Hence, our notation of "[No finding necessary]" in regard to paragraphs 30 and 31 of defendant's proposed findings of fact.

**8.** We make the finding of fact proposed in paragraph 40 of defendant's proposed findings of fact solely on the ground that plaintiff, in paragraph 18 of plaintiff's proposed findings of fact, also proposed that paragraph 11 of the stipulation should be made as a finding of fact. Under our view of the relevant facts, we do not believe that the fact plaintiff completed a particular number of seminars in a particular number of years is either a relevant or material fact in the determination of this case.

44. On July 17, 1979 Lyle Stone evaluated plaintiff, indicating that in the area of accounting, plaintiff had reached his level of advancement. (Stipulation No. 15)

45. On July 17, 1980 Lyle Stone evaluated plaintiff, indicating that in the area of accounting, he had reached his level of advancement. (Stipulation No. 16)

46. On July 27, 1981 Craig Roepke evaluated plaintiff, indicating that he was not recommending plaintiff for any new position. (Stipulation No. 17)

47. The Company's evaluations of plaintiff did not consider age as a factor, nor did they discriminate against plaintiff on the basis of age.[9]

48. Don Berkstresser was hired by the Company as Internal Audit Supervisor on January 17, 1979. (Stipulation No. 33)

49. [No finding necessary]

50. [No finding necessary]

51. Mr. Berkstresser remained as Internal Audit Supervisor until January 1, 1982, when he became Finance Manager. (Stipulation No. 40, as amended by agreement)

52. On April, 1979 Lyle Stone evaluated Don Berkstresser as a satisfactory employee and indicated that Don Berkstresser needed approximately two additional years as head of Internal Audit before he could be considered for advancement. (Stipulation No. 41)[10]

**9.** Each of the company's five evaluations of plaintiff made in the years 1977 to 1981, inclusive, reflected defendant's consistent view that plaintiff had reached his highest level of advancement when he was appointed General Accounting Supervisor. See paragraphs 42 to 46, inclusive, of our findings of fact, each of which were based on paragraphs 13 to 17, inclusive, respectively, of the parties' stipulation.

Plaintiff's age was mentioned in plaintiff's 1981 evaluation. Plaintiff's exhibit No. 25, page 19, shows that plaintiff, in Part IV of the self-appraisal portion of his 1981 evaluation responded to a form question which stated "What qualifications/skills are not being utilized in your present position?" by stating: "My area of responsibility has been decreased with very little authority under the new organization structure. Probably due primarily to age." The evaluation of Craig Roepke, plaintiff's 1981 appraiser, *id.*, page 23, shows that with the reduction of positions in the Finance Department noted in paragraph 19 of our findings of fact, the position of Supervisor of the Order Processing Unit had, in fact, been eliminated from plaintiff's supervision by the time of plaintiff's 1981 evaluation so that under the new organizational structure, plaintiff's supervisory responsibility was accordingly limited to the remaining units of General Accounting and Sales Control. Lyle Stone, who was Director of the Finance Department in 1981, reviewed and approved Craig Roepke's appraisal (which gave plaintiff an overall above average performance), but added the following comment: "I agree with appraiser's comments but disagree with employee's comments on question 4 of the Self Appraisal Employee Development (Appraiser's Report) Guidelines. Age was *not* a factor if, in fact, his area of responsibility did decrease under the new organization structure. With the new organization, positions were cre-

ated and filled based upon abilities and experience." (*Id.*, page 25) (Emphasis Mr. Stone's)

Craig Roepke testified on page 18 of his deposition testimony that he had discussed plaintiff's Part IV statement with him and testified that "I told him I didn't think it had anything to do with age. First of all, I really didn't think his authority had been decreased that much. He had due to organization restructuring lost some administrative departments that he had previously had, but as far as within the accounting area, I think he still retained most of the authority he ever had. I told him I really didn't think it had anything to do with age."

We find that Lyle Stone's contemporaneous comment which stated that plaintiff's age was not a factor that influenced plaintiff's position in defendant's new organizational structure and Craig Roepke's testimony that he so advised plaintiff at the time of plaintiff's 1981 evaluation were accurate statements of fact and *that neither the written statement nor the testimony reflected any* pretextual purpose whatsoever.

We make this detailed finding in regard to plaintiff's 1981 evaluation for the reason that the only mention of plaintiff's age in any of the documentary evidence was contained in the single sentence contained in plaintiff's comment in part IV of that self evaluation form and in Lyle Stone's contemporaneous comment thereon.

**10.** Plaintiff contends that the stipulated facts in paragraphs 41, 42 and 43, which we incorporate as paragraphs 52, 53, and 54 of our findings of fact, as those stipulated facts relate to the evaluations made in regard to Don Berkstresser, are not relevant. We disagree. We find that those evaluations, like those made of the plaintiff (as stated in paragraphs 42 to 46, inclusive, of our findings of fact), were not in any way tainted by any age discrimination fac-

53. On January 17, 1980, Lyle Stone evaluated Don Berkstresser as a satisfactory employee and indicated that, with further training and experience, he had the potential to branch into the EDP area. (Stipulation No. 42)

54. On January 17, 1981 Lyle Stone evaluated Don Berkstresser as a satisfactory employee and indicated that, with additional work experience, Don could progress into financial management. (Stipulation No. 43)

55. Upon assuming responsibility of Finance Manager on January 1, 1982, Don Berkstresser was earning the monthly salary of $2,585.00. (Stipulation No. 36)

56. On January 17, 1982 Don Berkstresser's monthly salary was increased to $2,817.65. (Stipulation No. 37)

57. Don Berkstresser was 35 years of age at the time he assumed the position of Finance Manager. (Stipulation No. 34)

58. The Company had legitimate reasons for not promoting plaintiff.

58A. The Company had legitimate reasons for assigning Don Berkstresser to the Finance Manager position.

59. The Company's reasons for terminating plaintiff were not pretextual.

60. [No finding necessary]

61. [No finding necessary]

62. On January 29, 1982 plaintiff was offered the opportunity to apply for Larry Courtney's position in the Accounting Department. (Stipulation No. 29) [11]

63. Plaintiff did not apply for the position in the Accounting Department. (Stipulation No. 30)

It is not necessary that we consider or make any of the findings of fact proposed in paragraphs 64 to 73, inclusive, of defendant's proposed findings of fact or those proposed in paragraphs 45 to 49 of plaintiff's proposed findings of fact. While the proposed findings of both parties contained in those paragraphs are based primarily on paragraphs 47 to 53 of the parties' stipulation, all of these findings proposed by both

tor and that defendant's evaluations of both plaintiff and Don Berkstresser were not made in any pretextual manner to conceal any age discrimination factor.

11. Plaintiff contends that the undisputed facts contained in paragraph 29 and 30 of the parties' stipulation, which we have made as paragraphs 62 and 63, respectively, of our findings of fact, are irrelevant to any issue in this case. We disagree for the reason that the fact defendant offered plaintiff an opportunity to apply for Larry Courtney's position in the Accounting Department and the fact plaintiff did not apply for that position must be considered in light of *when* the offer and refusal were made.

It is undisputed that plaintiff did not file his discrimination charge with the EEOC until on or about March 5, 1982. There is no evidence that plaintiff ever indicated to the defendant that he believed he had been terminated because of his age at any time *before* January 29, 1982, the date defendant made its offer. Indeed, it is clear from defendant's Exhibit No. 36, a contemporaneous memorandum of the conversation that John Kelly had with the plaintiff on January 29, 1982, that plaintiff was assured, contrary to a suggestion made by plaintiff to Mr. Kelly during the telephone conversation, that the defendant had not wanted to get rid of plaintiff and that plaintiff was being called as a qualified person for an open posi-

tion. It is obvious that paragraphs 29 and 30 of the stipulation entered into *before* trial were based on the accuracy of defendant's Exhibit No. 36, which, as the parties anticipated, would be corroborated and not disputed at trial.

While we do not suggest that defendant's offer to plaintiff may be considered as relevant to the issue of defendant's legal liability, we are satisfied that the circumstance that plaintiff was, in fact, offered the opportunity to apply for Larry Courtney's vacated position may properly be considered as a circumstance which was certainly consistent with defendant's position that plaintiff's age was not a circumstance that defendant considered when it terminated plaintiff in the first place. We simply cannot believe that if defendant had considered age as a factor in terminating plaintiff as of December 31, 1981 that it would get in touch with him on January 29, 1982 immediately upon learning that Larry Courtney's position in the Accounting Department would become vacant on February 5, 1982. Defendant's good faith in making its offer to plaintiff is corroborated by the fact that the defendant did not advertise the vacancy created by Larry Courtney's resignation until January 31, 1982, two days after plaintiff had advised John Kelly that he was not interested in applying for Larry Courtney's position. *See* Plaintiff's Exhibit No. 21.

parties relate to the issue of plaintiff's damages and to the issue of whether plaintiff may have failed to mitigate any damage he may have suffered. Our determination of the case in defendant's favor on the central issue of liability moots all issues relating to damages and the mitigation of damages.

### III. Conclusions of Law

We conclude, as plaintiff proposed in paragraphs 1 and 2 of plaintiff's proposed conclusions of law, that this Court has jurisdiction of this case pursuant to the applicable provisions of the Age Discrimination in Employment Act (ADEA); that plaintiff satisfied all the procedural requirements of the Act; and that the defendant is a proper defendant within the meaning of 29 U.S.C. § 630(b).

Although both parties rely, in part, on the same cases, they are in disagreement as to whether plaintiff established a prima facie case of age discrimination under the factual circumstances of this case. Both sides, for example, cite and rely upon the Fifth Circuit case of *Price v. Maryland Casualty Company,* 561 F.2d 609 (5th Cir.1977). Plaintiff's trial brief stated that "Generally, the elements of a *prima facie* case of age discrimination are (1) the plaintiff was a member of a protected group, (2) he was discharged, (3) he was replaced with a person outside the protected group, and (4) he was qualified to do the job. *Price v. Maryland Casualty Company,* 561 F.2d 609, 619 (5th Cir.1977) (adopting the *prima facie* test of *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a race discrimination case)." Defendant, on the other hand, stated in its trial brief that plaintiff "cannot be said to have made out a *prima facie* case because his job was eliminated, and defendant did not seek to replace him with another individual. See e.g. *Price v. Maryland Cas. Co.,* 561 F.2d 609 (5th Cir.1977)."

█ It is important that we examine plaintiff's reliance on the *Price* formula quoted in plaintiff's trial brief because it is apparent that plaintiff's claim of age discrimination was based on plaintiff's factual assumptions that (1) "the duties of the Finance Manager were the same or substantially the same as the plaintiff's duties as General Accounting Supervisor" (plaintiff's proposed finding of fact No. 37); that (2) "plaintiff was qualified for the position of Finance Manager (Plaintiff's proposed finding of fact No. 42); and that (3) when defendant appointed Don Berkstresser, rather than plaintiff, to the position of Finance Manager, "Don Berkstresser assumed plaintiff's duties as General Accounting Supervisor" (plaintiff's proposed finding of fact No. 36). It is thus clear that plaintiff contends that the evidence established all of the elements set out in the *Price* formula in that plaintiff contends that he proved that he was a member of a protected age group, that he was discharged, that he was qualified to do the job he had always performed, but that he could not do so because he was replaced by a younger person. We conclude that the *Price* formula is not to be applied in a mechanical manner in this or any other reduction in work force case.

It should first be noted that plaintiff's trial brief quoted dictum from *Price.* For it is clear that *Price* affirmed a judgment for the defendant in that ADEA case which was based on the theory that the plaintiff had *not* established a prima facie case. In *Price,* the Fifth Circuit simply approved the district court's finding that, on the facts, the defendant "hired no one to replace Price [the plaintiff], for the purpose of terminating him was to delete his position altogether." *Price* also concluded that "even assuming that Price [the plaintiff] made out a prima facie case, the district court found that Maryland [the defendant] demonstrated reasonable factors other than age for his termination."

The fact that *Price* must be distinguished on its facts does not suggest that we believe that the Fifth Circuit improperly resolved the uncertainty that then existed in that Circuit in regard to "whether the Title VII standard for making out a prima facie case, as articulated in *McDonnell Douglass Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to age discrimination actions." In *Williams v. General*

*Motors Corp.,* 656 F.2d 120, 127 (5th Cir. 1981), one of the cases relied upon by the plaintiff to support plaintiff's proposed conclusion of law No. 4,[12] the Fifth Circuit traced the development of that Circuit's rule of decision in regard to the elements of a prima facie ADEA case from its 1972 decision in *Hodgson v. First Savings & Loan Association,* 455 F.2d 818 (5th Cir. 1972) to its 1981 decision in *Williams. Williams* noted that *Price* and *Marshall v. Goodyear Tire & Rubber Company,* 554 F.2d 730 (5th Cir.1977) cited *McDonnell Douglas* "as a pathfinder" but that *Marshall* had properly concluded that "*McDonnell Douglas* [did] not establish an immutable definition of a prima facie case." 656 F.2d at 127.

*Williams* recognized that *Price* had set forth the elements of a prima facie ADEA case (which plaintiff quoted in his trial brief) but concluded that "the prima facie elements of *Price* were inapposite to a genre of age discrimination cases" and that "while we will apply the *Price* elements in proper cases, we have clearly held that they do not constitute 'the alpha and omega of possible tests' under the ADEA," quoting from *McCorstin v. United States Steel Corporation,* 621 F.2d 749, 753 (5th Cir.1980), (another Fifth Circuit case cited and relied upon by plaintiff). *Williams* expressly held that:

> Reduction-in-force cases are obviously outside the embrace of *Price* since reduction-case plaintiffs are simply laid off and thus incapable of proving the third *Price* element, i.e., actual replacement by a younger employee.

*Williams* promptly and properly added that "it is beyond peradventure that a statute which expressly endeavors 'to prohibit arbitrary age discrimination in employment,' 29 U.S.C. § 621(b) (1976), in fact covers reduction-in-force cases."

While it could be said that the Fifth Circuit's decision in *Williams,* particularly in regard to its express qualification of *Price's* dictum, tends to support defendant's, rather than plaintiff's, argument in regard to whether plaintiff did, in fact, establish a *prima facie* case, we need not be concerned with the Fifth Circuit's prima facie case rule of decision in ADEA cases for two reasons. First, the Eighth Circuit never experienced the difficulties apparently encountered by the Fifth Circuit in regard to whether the Title VII standards stated in *McDonnell Douglas* and the progeny of that case (all of which were most recently reaffirmed in *U.S. Postal Service Bd. of Govs. v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403) should be generally applied in ADEA cases. In the recent ADEA case of *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 289 (8 Cir.1982), for example, the Eighth Circuit quoted *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), one of the Title VII progeny of *McDonnell-Douglas,* and concluded, without any apparent difficulty, that "although the Court in *Burdine* addressed a claim of gender discrimination in violation of Title VII, the same standards apply in an ADEA case." [13]

■ The second reason we need not resolve the question of whether plaintiff may have established a prima facie case is that this Court is satisfied, as was the Eighth Circuit satisfied in *Halsell,* that even if it is assumed that plaintiff may have presented sufficient evidence to establish a prima facie case of age discrimination, we are convinced that, on the facts, the defendant established legitimate, non-discriminatory reasons for plaintiff's termination and that defendant also established that those reasons were not pretextual.

---

12. Plaintiff proposed that we conclude the following in paragraph 4 of plaintiff's proposed conclusions of law: "Plaintiff has established the prima facie elements of a work force-reduction case."

13. *Halsell* appropriately pointed out that while Title VII standards are to be generally considered to be applicable to an ADEA case, it must nevertheless be recognized that "the proof necessary to establish a prima facie case will vary according to the circumstances of the case."

This Court has long followed the practice in the trial of both Title VII and jury-waived ADEA cases of giving the plaintiff the benefit of any doubt as to whether plaintiff may have established a prima facie case and to require the defendant to go forward with its evidence. This Court is thus in a position to rule the merits of plaintiff's claim within the framework of the standards established in *McDonnell-Douglas.* Such a practice has the added advantage of permitting appellate review on the basis of all the evidence which each of the parties wished to adduce. We see no reason why that practice should not be followed in this case.

Plaintiff, in paragraph 5 of his proposed conclusions of law, suggested that we conclude, as a matter of law, that "Defendant has not carried its burden of persuasion that Plaintiff's termination was based on legitimate business considerations." Plaintiff's trial brief accurately noted that *McCorstin v. United States Steel Corporation,* 621 F.2d 749 (5th Cir.1980) stated that "in an age discrimination case based on reduction in work force, there may be a question as to whether or not the Plaintiff has been replaced at all," and that "evidence of a pattern of terminating older workers when a reduction in work force occurs allows a reasonable inference that age played a role in Plaintiff's discharge."

What was said in *McCorstin,* however, must be considered in light of the factual circumstances of that case. *McCorstin* cannot be said to support plaintiff's proposed conclusion No. 5 for the reason that it is clear from our findings of fact that the plaintiff in this case was not, in fact, replaced by a younger employee. It is likewise clear that, on the facts, the evidence in this case simply did not establish any pattern that the defendant considered age as a factor in carrying out the reduction of its work force which was mandated by legitimate economic reasons.

Indeed, the pattern established by the undisputed evidence in this case shows that the percentage of exempt employees who were 40 years old or older actually *in-creased* rather than decreased between September 1, 1981 and March 5, 1982, both in regard to persons employed by the defendant generally (See Defendant's Exhibit No. 30) and in particular regard to persons employed in defendant's Finance Department (see Defendant's Exhibit No. 31). It is thus clear that the factual circumstances of this case are comparable to those presented in ADEA cases such as *Stendebach v. CPC Intern. Inc.,* 691 F.2d 735 (5 Cir.1982), in which the Fifth Circuit affirmed the district court's direction of a verdict for the defendant. In that case the statistical evidence established that the "average age of the salaried work force prior to the reduction was 43.8 years; the average age post-reduction was 45.9 years." *Id.* at 737. *Stendeback* concluded, however, that the statistical data was "totally unpersuasive of a discriminatory intent by CPC." *Id.* at 738. *See also Mastie v. Great Lakes Steel Corp.,* 424 F.Supp. 1299 (E.D.Mich.1976), in which the district court considered statistical evidence in a jury-waived ADEA case.

In *Mastie,* plaintiffs "contended that statistical evidence establishes that defendant made its decision to terminate plaintiffs on the basis of age." *Id.* at 1305. The statistical data in that case established that there was, in fact, a slight decrease in the average age of persons employed after the reduction in work force. The district court summarized the factual data as follows:

> Before the termination of Mastie and Seymour the average age of the nineteen employees in the evaluated group was 45.05 years, whereas, after the plaintiffs' termination, the average age of the remaining employees was 43.76 years. Comparing the before and after statistics reveals that the average age of the evaluated employees dropped 1.29 years.

The district court, however, stated that "the court concludes that a decrease of 1.29 years in the average age of employees remaining employed by a company following termination of some employees does not establish even a prima facie case of age discrimination." The statistical data introduced in evidence in this case is more favor-

able to the defendant than that considered by the district court in *Mastie.*

We have considered all of the other cases cited and relied upon by the plaintiff in support of plaintiff's proposed conclusion of law No. 5. Plaintiff's trial brief either quotes or paraphrases various conclusions stated in the cases cited and relied upon by plaintiff. Plaintiff's conclusions of law and plaintiff's trial brief were prepared and filed before the case was tried and thus reflect what plaintiff hoped to establish by the evidence that would be adduced at trial. Our findings of fact establish that plaintiff's hopes were not fulfilled. Plaintiff's evidence simply did not sustain the burden of establishing the factual assumptions upon which plaintiff's proposed conclusions of law were based. Further detailed discussion of the cases upon which plaintiff cited and relied is unnecessary; we need state only that all of those cases are distinguishable on their facts.

Accordingly, we conclude that even if it be assumed that plaintiff adduced sufficient evidence to establish a prima facie case of age discrimination, under the findings of fact above stated, the defendant articulated legitimate, non-discriminatory reasons for terminating plaintiff. We further conclude that under the findings of fact above stated that the plaintiff did not carry the burden of proving that defendant's actions were pretextual.[14]

For the reasons stated, it is

ORDERED (1) that our findings of facts and the conclusions of law stated in our memorandum opinion shall be considered as findings and conclusions made pursuant to Rule 52(a) of the Rules of Civil Procedure. It is further

ORDERED (2) that, in accordance with Rule 58 of the Rules of Civil Procedure, the Clerk shall prepare and set forth on a separate document an appropriate judgment for the defendant. The Clerk shall consult with counsel for both sides as to the form of judgment before the same is entered.

---

14. It should be added that we do not disagree with the general proposition stated in plaintiff's final proposed conclusion of law No. 6, which stated that: "Defendant's offer to Plaintiff after Plaintiff's termination, of a lesser job does not terminate Plaintiff's right to relief." Our discussion of that factual circumstance in our findings of facts makes clear that our determination of the case in favor of the defendant is not based on any legal notion that defendant's job offer somehow terminated plaintiff's right to legal relief.

We do not believe that it did. We do believe, as we have stated in our footnote 11 above, that the evidence concerning the job offer is relevant evidence to be considered together with all the other facts and circumstances of this case.